UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

PRIYANK RAJ,

                        Plaintiff,

v.

UNITED STATES DEPARTMENT OF
HOMELAND SECURITY, *et al.*,

                        Defendants.

No. 1:25-cv-10911-IT

**MEMORANDUM IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS**

**Table of Contents**[1]

I.    Introduction...................................................................................................................... 3

II.    Background ...................................................................................................................... 4

    A.    The F-1 Nonimmigrant Student Classification ................................................... 4

    B.    The Student and Exchange Visitor Information System....................................... 7

    C.    Student Criminal Alien Initiative ...................................................................... 10

    D.    Plaintiff's Complaint..........................................................................................11

III.    Legal Standard .............................................................................................................. 12

IV.    Argument ...................................................................................................................... 12

    A.    The Court Lacks Subject Matter Jurisdiction ................................................... 12

        1.    ICE Has Redressed Plaintiff's Request to Have His SEVIS Record Reactivated........ 12

        2.    Plaintiff has F-1 Status and Never Lost it...................................................... 14

        3.    The Voluntary Cessation Doctrine Does Not Preclude Mootness Here....................... 17

        4.    Plaintiff Lacks Standing to Assert any Future Claim, which is Unripe Regardless...... 20

V.    Conclusion .................................................................................................................... 21

---

[1] Pursuant to this Court's Standing Order Regarding Motion Practice, undersigned counsel attempted to include a Table of Authorities but encountered technical difficulties near the filing deadline in doing so.  If the Court wishes that Defendants submit a revised version of this brief with a Table of Authorities added, Defendants will of course submit one.

I.    **INTRODUCTION**

This case is now moot. Plaintiff has received the relief requested and there is no reasonable expectation that the challenged conduct will recur. Nor can Plaintiff show a substantial risk of future injury. Accordingly, there is no longer any dispute for this Court to decide, and the Court should dismiss this case for lack of subject matter jurisdiction.

This lawsuit centers around the Student Exchange and Visitor Information System ("SEVIS") database. SEVIS is a law enforcement system of records used to track international students enrolled in educational programs in the United States.  *See generally* Ex. A, 86 Fed. Reg. 69,663, 69,668 (Dec. 8, 2021), Doc. No. 26-1. SEVIS contains a record about each international F, J, or M nonimmigrant student in the United States, and contains information about their dependents and the school officials associated with the international student programs. *Id.* at 69,664-665, Doc. No. 26-1 at 5–7. Congress granted U.S. Immigration and Customs Enforcement ("ICE") the authority to create and manage that system and to use it in immigration enforcement. 8 U.S.C. § 1372; 6 U.S.C. § 252(a)(4).

In April 2025, pursuant to what ICE called the Student Criminal Alien Initiative ("SCAI"), ICE set to "terminated" the SEVIS records for Plaintiff and approximately 5,000 other students, based on National Crime Information Center ("NCIC") database checks. By May 6, 2025, ICE had reversed course, reactivating the SEVIS records. The Plaintiff in this lawsuit was included in that reactivation. But ICE did more than simply reactivate the records. It made the reactivation retroactive to the date of termination, it sent a letter to each student stating that the reactivation was retroactive, it issued a new policy guiding such terminations, and it stated that it would not terminate the records again based solely on the NCIC records that led to the initial termination. Furthermore, ICE and U.S. Citizenship and Immigration Services ("USCIS") have

3

explained that the termination of a SEVIS record is *not* a termination of, or adjudication of, F-1 student *status*. The *status* of the students was not changed by the SEVIS record change, nor did the record change reflect a reality that the status had changed. The SEVIS record terminations were an action taken in a law enforcement database, not an adjudication of status.

Accordingly, Plaintiff Priyank Raj's complaint (Doc. No. 1) is now moot, and the Court should dismiss it for lack of subject matter jurisdiction. Fed. R. Civ. P. 12(b)(1). *See, e.g.*, *Chafin v. Chafin*, 568 U.S. 165, 172 (2013). ICE has reinstated Plaintiff's SEVIS record with retroactive effect, and ICE has stated in sworn declarations that it will not terminate Plaintiff's SEVIS record again solely on the NCIC hit that led to the initial termination under the SCAI. And even if Plaintiff is challenging any future action taken on the basis of his previously-terminated SEVIS record, he lacks standing to do so and his claim is unripe in any event. *See Reddy v. Foster*, 845 F.3d 493, 500 (1st Cir. 2017) (finding no standing where plaintiff failed to show credible threat of future harm); *Texas v. United States*, 523 U.S. 296, 300 (1998) ("A claim is not ripe for adjudication if it rests upon "'contingent future events that may not occur as anticipated, or indeed may not occur at all'" (quoting *Thomas v. Union Carbide Agric. Prods. Co.*, 473 U.S. 568, 580–81 (1985))).

## II.    BACKGROUND

### A.    The F-1 Nonimmigrant Student Classification

The Immigration and Nationality Act ("INA"), as amended, allows for the entry of an alien, who "is a bona fide student qualified to pursue a full course of study and who seeks to enter the United States temporarily and solely for the purpose of pursuing such a course of study . . . at an established college, university, seminary, conservatory, academic high school, elementary school, or other academic institution or in an accredited language training program in

4

the United States." 8 U.S.C. § 1101(a)(15)(F)(i) (hereinafter, "F-1 status"). To qualify for F-1 nonimmigrant status, a foreign national is required to, among other things, (1) apply and gain admission to an approved U.S. educational institution, (2) obtain a "Certificate of Eligibility for Nonimmigrant (F-1) Student Status" (a "Form I-20"), issued by the school, and (3) when applicable, submit a visa application at the U.S. Embassy or Consulate abroad. *See* https://studyinthestates.dhs.gov/students/get-started/international-student-life-cycle; *see also* USCIS Policy Manual, Vol. 2, Part F, Chapter 2 (Eligibility Requirements), https://www.uscis.gov/policy-manual/volume-2-part-f-chapter-2.

Once a student has received an F-1 visa from the State Department, the student may present himself or herself to a port of entry for admission to the United States. At the port of entry, the applicant must present the Form I-20, issued by a certified school in the student's name and documentary evidence of financial support; and he or she must demonstrate he or she intends to attend the school specified on the visa. 8 C.F.R. § 214.2(f)(1)(i); *see also* USCIS Policy Manual, Vol. 2, Part F, Chapter 2 (Eligibility Requirements), https://www.uscis.gov/policy-manual/volume-2-part-f-chapter-2. To maintain F-1 status, at a minimum a nonimmigrant student must "pursue a full course of study" or "engage in authorized practical training." 8 C.F.R. § 214.2(f)(5)(i); (f)(6)(iii); *see also id.* §§ (f)(7)(iii) (failure to complete program on time because of academic probation or suspension); (f)(12)(ii) (failure to comply with optional practical training reporting requirements); (f)(9) (restrictions on employment).

Individuals admitted in F-1 status do not have a set time period for which they are admitted to the United States but instead are permitted to remain in the United States for the duration of status (or "D/S"), *see Silva v. Gonzales*, 463 F.3d 68, 69 (1st Cir. 2006), which "is defined as the time during which an F-1 student is pursuing a full course of study at an

educational institution certified by SEVP for attendance by foreign students, or engaging in authorized practical training following completion of studies[.]"  8 C.F.R. § 214.2(f)(5)(i). During that time, the students use their Form I-20 as proof of their status, for example to apply for a driver's license or other benefits, if available to them. *See* https://studyinthestates.dhs.gov/students/prepare/students-and-the-form-i-20 ("Applying for Benefits").  The Form I-20 "proves that [the student is] legally enrolled in a program of study in the United States." *Id.*  The Form I-20 includes an end-date for the program of study. *See* USCIS Policy Manual, Vol. 2, Part F, Chapter 8 (Change of Status, Extension of Stay, and Length of Stay) at paragraph C.1, https://www.uscis.gov/policy-manual/volume-2-part-f-chapter-8.  A designated school official can revise that end date and print a new I-20 for the student. *See* https://studyinthestates.dhs.gov/sevis-help-hub/student-records/manage-program-dates-registration-and-course-load/manage-initial.  If a student stays beyond their authorized end date (including any grace period), they may be considered failing to maintain their nonimmigrant status. https://www.uscis.gov/policy-manual/volume-2-part-f-chapter-8.

An F-1 student admitted for the duration of status, who receives a decision from USCIS (through reinstatement or application for a change of status or other immigration benefit) concluding that he or she violated his or her nonimmigrant status will begin to accrue unlawful presence the day after that request is denied. *See* USCIS Memorandum on May 6, 2009, "Consolidation of Guidance Concerning Unlawful Presence for Purposes of Section 212(a)(9)(B)(i) and 212(a)(9)(C)(i)(1) of the Act," at 25, https://www.uscis.gov/sites/default/files/document/memos/revision_redesign_AFM.PDF; *see also* 8 C.F.R. § 239.3.

B.    **The Student and Exchange Visitor Information System**

SEVIS is "a law enforcement system of records."  Ex. A, 86 Fed. Reg. at 69,668, Doc. No. 26-1 at 11.  It is the most recent iteration of a system created pursuant to a Congressional mandate that "[t]he [Secretary of Homeland Security],[2] in consultation with the Secretary of State and the Secretary of Education, . . . develop and conduct a program to collect [certain information] from approved institutions of higher education, other approved educational institutions, and designated exchange visitor programs in the United States with respect to aliens who have the status, or are applying for the status, of nonimmigrants under subparagraph (F), (J), or (M) of section 1101(a)(15) of this title."  8 U.S.C. § 1372(a)(1)(A).  SEVIS "is a web-based system" that DHS "uses to maintain information on Student and Exchange Visitor Program-certified schools, F-1 and M-1 students who come to the United States to attend those schools, U.S. Department of State-designated Exchange Visitor Program sponsors and J-1 visa Exchange Visitor Program participants."  *See* "ICE, Student and Exchange Visitor Information System," found online at: https://www.ice.gov/sevis/overview.

In § 1372, Congress described the system of records that should be used to maintain information about F, J, and M students.  *See generally* 8 U.S.C. § 1372.  It is separate from the nonimmigrant statuses described in 8 U.S.C. § 1101(a)(15)(F), (M), and (J), nor does § 1372 equate the records in the system to nonimmigrant status.  Similarly, § 1372 does not state that the system of records is a method to adjudicate or terminate nonimmigrant status. *See id*.  Indeed, nonimmigrant status existed long before SEVIS.  Further, Congress mandated that ICE shall administer the program to collect information on nonimmigrant foreign students described in 8

---

[2] 8 U.S.C. § 1372 refers to the Attorney General, but those functions were transferred to DHS in the Homeland Security Act of 2002.

U.S.C. § 1372 and "shall use" the information collected in SEVIS "to carry out the enforcement functions of the agency," 6 U.S.C. § 252(a)(4), but it did not say that the system of records is the enforcement mechanism. *Id.* Instead, SEVIS is a database of information.

In 2021, consistent with § 1372, and in accordance with the Privacy Act of 1974, the Department of Homeland Security ("DHS") "modif[ed], rename[d] and reissue[d]" its database under § 1372 as "DHS/ICE-001 Student and Exchange Visitor Information System (SEVIS) System of Records." *See* Ex. A, 86 Fed. Reg. at 69,663, Doc. No. 26-1 at 2. That Federal Register System of Records Notice explained that "[t]he purpose of this system of records is to maintain the integrity of the U.S. immigration system by collecting, maintaining, and analyzing information so that only bona fide nonimmigrant students or exchange visitors gain entry to the United States and that institutions accepting nonimmigrant students are legitimate and certified and adhere to the federal rules and regulations that govern them." *Id.* at 69,664, Doc. No. 26-1 at 5. It further explained that DHS and the State Department use the system for various purposes, some of which relate to the students themselves and some of which are school-specific, including:

- "validat[ing] the identity of F/M/J nonimmigrants, federal government personnel, and school and program officials to ensure data integrity, accuracy, and proper data matching";

- "*facilitat[ing] and support[ing] determination activities* related to admissibility into the United States and the eligibility and status of benefits";

- "decid[ing] whether to certify a school or designate an EV Program so that F/M/J nonimmigrants may enroll or participate in the U.S.-based school or program";

8

- "*support vetting of F/M/J nonimmigrant*s and their dependents and school and program officials" through the use "supplemental information such as open-source media (*e.g.,* publicly available information in newspaper articles, school websites, government websites, social media sites and blogs, online forums)";

- "*monitor[ing] the compliance* of F/M/J nonimmigrants, schools, programs, and school and program officials with immigration laws and regulations";

- *"perform[ing] administrative and criminal investigations* related to the participation of F/M/J nonimmigrants, school and EV Program sponsors, and the schools and exchange visitor programs that enroll or seek to enroll individuals through the SEVP certification process, and to identify noncompliance with U.S. laws and regulations";

- "creat[ing] and provid[ing] reports for analyzing compliance issues and identifying activities and related individuals (if needed) for evidence-based decision-making."

*Id.* at 69,664-665, Doc. No. 26-1 at 5–6 (all emphasis added).

Consistent with these many identified purposes of the SEVIS database and the information therein, SEVIS contains biographical information such as name and date of birth; identity information such as fingerprint information and passports; criminal history; education information; employment information; financial support information; travel records; and case information such as "adjudication determinations; site visit reports; appeals determinations; administrative reviews; and information regarding investigations." *Id.* at 69,665-666, Doc. No. 26-1 at 7–8. The information contained in SEVIS is obtained from "F/M/J nonimmigrants; proxy, parent, or legal guardians; school officials; program officials; federal and state government personnel; federal agency systems; governing bodies; and members of the public." *Id.* at 69,666, Doc. No. 26-1 at 8.

9

**C.      Student Criminal Alien Initiative**

In March and April 2025, ICE engaged in the SCAI. Ex. C, *Bushireddy v. Lyons*, No. 25-cv-01102 (D.D.C. May 5, 2025), May 5, 2025 Hrg. Tr. at 61:18-25 ("May 5 Hrg. Tr."), Doc. No. 26-3. As part of that initiative, ICE searched for NCIC records pertaining to international students in the United States. *Id.* at 62:2-13; Ex. B, *Patel v. Lyons*, No. 25-cv-01096 (D.D.C. Apr. 29, 2025), April 29, 2025 Hrg. Tr. 9:2-11 ("April 29 Hrg. Tr."), Doc. No. 26-2. ICE's review led it to compile a list of approximately 6,400 students with NCIC hits which it sent to the State Department for further review and potential action. Ex. C, Doc. No. 26-3, May 5 Hrg. Tr. at 62:11-19, 63:20-64:25, 65:12-15; Ex. B, Doc. No. 26-2, April 29 Hrg. Tr. at 11:15-12:15, 14:2-9. The State Department made recommendations to terminate SEVIS records in some instances and also revoked over 3,200 visas. Ex. C, Doc. No. 26-3, May 5 Hrg. Tr. at 67:22-68:2. Ultimately, ICE terminated about 5,000 SEVIS records. *Id.* 66:8-18; 68:7-24; Ex. D, *Bushireddy v. Lyons*, No. 25-cv-01102 (D.D.C. May 5, 2025), May 5, 2025 Hrg. Tr. at 42:15-16, Doc. No. 26-4. That amounts to less than half a percent of the over 1.3 million international students admitted to the United States. *Id.* at 62:8-11; Ex. B, Doc. No. 26-2, April 29 Hrg. Tr. at 9:2-11.

As ICE and USCIS have explained in sworn declarations, the SEVIS record changes were *not* a change to the students' F-1 status. Ex. G, Baldwin Decl. ¶ 9 (Doc. No. 26-7 at 2–3); Ex. F, Young Decl. ¶ 7 (Doc. No. 26-6 at 2). F-1 students are admitted to the United States for duration of status, which is defined by 8 C.F.R. 214.2(f)(5)(i). Young Decl. ¶ 4 (Doc. No. 26-6 at 1). The setting of or change of a SEVIS record designation is not an adjudication of the actual F-1 status. *Id.* ¶ 7. Rather, adjudications occur in connection with an immigration benefit application or during proceedings before an immigration judge. *Id.* ¶¶ 9, 10.

10

Ultimately, by May 6, 2025, ICE reactivated the SEVIS records. Ex. E, Watson Decl. ¶¶ 4-5 (Doc. No. 26-5 at 2). Critically, ICE did more than simply return the records' designation to "active." It also sent personalized letters to the F-1 students associated with the previously-terminated SEVIS records stating that the return of the SEVIS record to active was retroactive to the date of the termination such that there is no lapse in the record. Ex. G, Baldwin Decl. ¶ 15 (Doc. No. 26-7 at 3–4). Since the terminations, ICE also issued a new policy regarding SEVIS terminations in which it indicates that it will not terminate a SEVIS record based upon a Department of State revocation that is effective upon departure rather than immediately effective. Ex. H, ICE April 26, 2025, Policy, Doc. No. 26-8 at 3. ICE also has stated in a sworn declaration that it "will not re-terminate SEVIS records based solely on the NCIC record that led to the initial termination or solely on any related visa revocation that is effective upon departure." Ex. G, Baldwin Decl. ¶ 11 (Doc. No. 26-7 at 3).

### D.    Plaintiff's Complaint

Plaintiff, a citizen of India, is a resident of North Andover, Massachusetts on F-1 student status.  Compl., Doc. No. 1 at 1.  "Plaintiff has been enrolled in a lawful full-time Executive MBA program at the University of the Cumberlands." *Id.* at 2.

On April 8, 2025, Plaintiff's SEVIS record was terminated. *Id.*  The basis for termination, as noticed, was "OTHER – Individual Identified in criminal records check and/or has had their visa revoked." *Id*.  Plaintiff alleges that the "basis of the termination appears to relate to a 2018 misdemeanor charge" against him "which was dismissed on February 25, 2019[.]" *Id*.

Plaintiff alleges that termination of his SEVIS record "is causing irreparable harm, including loss of lawful status, risk of removal, and inability to continue education or

employment authorization." *Id*. Plaintiff seeks retrospective and prospective relief. First,

Plaintiff requests a Court Order "to reinstate Plaintiff's SEVIS record or provide a formal

process to challenge the termination." *Id*. at 3. Prospectively, he seeks an order enjoining

"Defendants from taking any further adverse action based on the terminated SEVIS record unless

due process is provided." *Id.* at 3.

## III.    LEGAL STANDARD

Federal Rule of Civil Procedure 12(b)(1) "is a large umbrella, overspreading a variety of

different types of challenges to subject-matter jurisdiction[,]" including "mootness" and

standing. *See Valentin v. Hospital Bella Vista*, 254 F.3d 358, 362–63 (1st Cir. 2001). Under Rule

12(b)(1), Plaintiff bears the burden to show that the Court has subject matter jurisdiction over his

claims. *See Reyes-Colón v. United States*, 974 F.3d 56, 60 (1st Cir. 2020). Where, as here, a

motion to dismiss for lack of subject matter jurisdiction "contests factual allegations of the

complaint, the court must engage in judicial factfinding to resolve the merits of the jurisdictional

claim." *Cebollero-Bertran v. Puerto Rico Aqueduct & Sewer Auth.*, 4 F.4th 63, 69 (1st Cir.

2021). To do so, the Court may consider materials outside the pleadings such that attaching

"exhibits to a Rule 12(b)(1) motion does not convert it to a Rule 56 motion" for summary

judgment. *Gonzalez v. United States*, 284 F.3d 281, 288 (1st Cir. 2002).

## IV.    ARGUMENT

### A.    The Court Lacks Subject Matter Jurisdiction

#### 1.    ICE Has Redressed Plaintiff's Request to Have His SEVIS Record Reactivated

"[N]o principle is more fundamental to the judiciary's proper role in our system of

government than the constitutional limitation of federal-court jurisdiction to actual cases or

controversies." *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 408 (2013) (quoting

*DaimlerChrysler Corp. v. Cuno*, 547 U.S. 332, 341 (2006)). "When a case is moot—that is, when the issues presented are no longer live or when the parties lack a legally cognizable interest in the outcome—a case or controversy ceases to exist, and dismissal of the action is compulsory." *Cruz v. Farquharson*, 252 F.3d 530, 533 (1st Cir. 2001). A claim is no longer "live" when "a court cannot provide effectual relief[.]". *Oakville Dev. Corp. v. FDIC*, 986 F.2d 611, 613 (1st Cir. 1993). The party seeking to establish mootness bears the "heavy burden" of proving its existence. *Rian Immigrant Ctr. v. Cuccinelli*, No. 19-cv-11880-IT, 2020 WL 6395575, at *3 (D. Mass. Nov. 2, 2020) (quoting *Mangual v. Rotger-Sabat*, 317 F.3d 45, 60 (1st Cir. 2003)).

Plaintiff initiated this litigation because his SEVIS record was changed from an active designation to terminated. Compl., Doc. No. 1, at 2. Plaintiff sought, from the outset, to have his record reinstated. *Id.* at 3. That was completed last spring. *See* Ex. E, Watson Decl. ¶ 5 (Doc. No. 26-5 at 2); Ex. G, Baldwin Decl. ¶ 12 (Doc. No. 26-7 at 3). Thus, the Court cannot redress the record termination because ICE already has done so. *See, e.g., Vertex Tower Assets, LLC v. Town of Wakefield*, 771 F. Supp. 3d 80, 88–89 (D.N.H. 2025) (explaining that claims resolved by defendant during pendency of a lawsuit are moot).

To the extent Plaintiff argues that the record's reinstatement is insufficient because the database record history still shows that ICE terminated the record at one point, ICE also has addressed that concern. ICE has stated under oath that the reactivation is retroactive. Ex. E, Watson Decl., ¶ 7 (Doc. No. 26-5 at 2); Ex. G, Baldwin Decl. ¶ 13 (Doc. No. 26-7 at 3). Furthermore, ICE sent an individualized letter to affected individuals stating that reactivation of the SEVIS record is retroactive to the date of record termination. Ex. G, Baldwin Decl. ¶ 15 (Doc. No. 26-7 at 3–4).

13

Accordingly, from reinstatement of Plaintiff's SEVIS record "forward, there was no longer a live controversy between" the parties such that Plaintiff "lack[s] any cognizable stake in the outcome of the proceedings." *Cruz*, 252 F.3d at 533; *cf. Badam v. Lyons*, No. 25-cv-1098, 2025 WL 1302026, at *2 (D.D.C. May 5, 2025) ("The reactivation of plaintiffs' SEVIS records—which is the primary relief plaintiffs sought in their motions—means that they are neither presently nor imminently subject to any of the harms they pointed to in their briefs.").[3]

Likewise, Plaintiff's request for declaratory relief that "the termination of Plaintiff's SEVIS record was unlawful"[4] is moot because there no longer "is a substantial controversy . . . *of significant immediacy and reality to warrant the issuance of a declaratory judgme*nt." *Harris v. Univ. of Mass. Lowell*, 43 F.4th 187, 192 (1st Cir. 2022) (all emphasis in original) (quoting *ACLU of Mass. v. U.S. Conf. of Cath. Bishops*, 705 F.3d 44, 53–54 (1st Cir. 2013)).

### 2.    Plaintiff has F-1 Status and Never Lost it

Moreover, Plaintiff never lost his F-1 status so any request to restore it is not redressable. First, declarations from ICE and USCIS show that a SEVIS record termination is not a termination of F-1 *status*. *See* Ex. G., Baldwin Decl. ¶ 9 (Doc. No. 26-7 at 2–3); Ex. F, Young Decl. ¶ 7 (Doc. No. 26-6 at 2). The Young Declaration explains ways in which F-1 nonimmigrant *status* could be terminated or adjudicated. *See* Ex. F, Young Decl. ¶¶ 8-10 (Doc. No. 26-6 at 2). None of those actions is alleged to have occurred here.

---

[3] Defendants maintain that there never was a live case or controversy because the SEVIS record is separate and apart from F-1 nonimmigrant status. But, assuming there was a live case or controversy to begin with, there certainly is not now. *See Gagliardi v. TJCV Land Tr.*, 889 F.3d 728, 732 (11th Cir. 2018) (assuming for purposes of argument that the appellants had standing at the outset of the suit and concluding that the lawsuit had become moot).

[4] Compl., Doc. No. 1 at 3.

Those declarations are consistent with other evidence concerning SEVIS. First, SEVIS is a law enforcement database that contains records about foreign nationals, schools, designated school officials, and others involved in the student nonimmigrant programs. Ex. A, 86 Fed. Reg. at 69,663, Doc. No. 26-1 at 2. It is a *tool* used by DHS and the Department of State to support other functions, and those functions were explained publicly in the Federal Register on December 8, 2021, over three years before the actions that led to this litigation. *See id.; see also https://studyinthestates.dhs.gov/schools/report/maintaining-accurate-sevis-records*. That Notice describes SEVIS's use as "validat[ing] the identity of F/M/J nonimmigrants"; "*facilitat[ing] and support[ing] determination activities* related to admissibility into the United States and the eligibility and status of benefits"; "*support vetting of F/M/J nonimmigrant*s and their dependents and school and program officials"; "*monitor[ing] the compliance*" with immigration laws and regulations; "*perform[ing] administrative and criminal investigations* related to the participation of F/M/J nonimmigrants, school and EV Program sponsors, and the schools and exchange visitor programs"; "create[ing] and provid[ing] reports for analyzing compliance issues and identifying activities and related individuals (if needed) for evidence-based decision-making." Ex. A, 86 Fed. Reg. at 69,664-665, Doc. No. 26-1 at 5 (all emphasis added). Nothing in the Notice suggests that SEVIS is a method by which ICE can adjudicate F-1 student status.

In fact, the evidence shows that setting the SEVIS record to terminated does not terminate F-1 student status, nor is a SEVIS record terminated only when F-1 student status is terminated. By way of example, a *school* can terminate a SEVIS record, *see https://studyinthestates.dhs.gov/sevis-help-hub/student-records/completions-and-terminations/terminate-a-student*, but there is no indication that in doing so the *school* terminates a student's *nonimmigrant status*, nor is there any evidence that the government has delegated the

15

authority to terminate nonimmigrant status to schools. Indeed, ICE notes that "termination is not always negative. [A designated school officer] can terminate records for several normal, administrative reasons." *Id.* Similarly, if a school mistakenly terminates a SEVIS record, it can have that record reactivated by ICE, but there is no indication that the mistaken termination affects the student's nonimmigrant status or that such status must be remedied after a mistaken termination. *See https://studyinthestates.dhs.gov/sevis-help-hub/student-records/corrections-and-correction-requests/correction-requests/correct-1*. The fact that a school can terminate a SEVIS record without terminating a student's *nonimmigrant status* shows that SEVIS record and status are not linked.

USCIS's policy on accrual of unlawful presence is in accord. The USCIS Policy Manual explains that "[i]n general, F-1 students admitted for duration of status who violate the terms of their status, begin to accrue unlawful presence *the day after USCIS or an immigration judge determines that they have violated their nonimmigrant status*." Policy Manual Vol. 2, Part F, Chapter 8, section 2.A (emphasis added), https://www.uscis.gov/policy-manual/volume-2-part-f-chapter-8. Indeed, USCIS explained in a sworn declaration that it does not equate termination of the SEVIS record with termination of immigration status or an adjudication of an immigration benefit, and if USCIS saw that a SEVIS record was terminated and reactivated, it would continue processing a benefit request. Ex. F, Young Decl. ¶¶ 7, 11 (Doc. No. 26-6 at 2). Even if USCIS required an explanation of information in the SEVIS record when adjudicating a benefit application (such as a request for work authorization or change of status), it could seek that information from the applicant through a "Request for Evidence" or "Notice of Intent to Deny." *See, e.g.,* 8 C.F.R. 103.2(b)(8). There is no allegation here that Plaintiff has had his status

adjudicated by USCIS through a benefit application, or by an immigration judge in immigration proceedings.

The declarations are also consistent with information on DHS's website which explains that the I-20 is a student's proof of status, not the SEVIS record. *See* https://studyinthestates.dhs.gov/students/prepare/students-and-the-form-i-20 ("Your Form I-20 proves that you are legally enrolled in a program of study in the United States. … If you are eligible to apply for a driver's license or a social security number, remember to bring your Form I-20 with you."). Students do not even have access to the SEVIS records about them because SEVIS is a government law enforcement database; SEVIS records are not owned or controlled by the students.

Accordingly, any claim that ICE terminated Plaintiff's F-1 status is moot, too.

### 3.    The Voluntary Cessation Doctrine Does Not Preclude Mootness Here

Plaintiff may argue that the case is not moot because the voluntary cessation exception to mootness applies and ICE could terminate the SEVIS records again. "[T]he voluntary-cessation doctrine exists to stop a scheming defendant from trying to immunize itself from suit indefinitely by unilaterally changing its behavior long enough to secure a dismissal and then backsliding when the judge is out of the picture, repeating this cycle until it achieves all its unlawful ends." *Boston Bit Labs, Inc. v. Baker*, 11 F.4th 3, 10 (1st Cir. 2021) (cleaned up). "The doctrine is 'an evidentiary presumption that the controversy . . . continues to exist,' based on 'skeptic[ism] that cessation of violation means cessation of live controversy.'" *Id.* quoting *Friends of the Earth, Inc. v. Laidlaw Env't Servs. (TOC), Inc.*, 528 U.S. 167, 213-14 (2000) (Scalia, J., dissenting). Under the voluntary cessation doctrine, the defendant must show that "the challenged behavior cannot reasonably be expected to recur." *Already, LLC v. Nike, Inc.*, 568

U.S. 85, 96, (2013). Here, Defendants have made that showing through their actions and declarations.

First, Defendants reactivated all affected SEVIS records months ago. Ex. E, Watson Decl. ¶ 5 (Doc. No. 26-5 at 2), even though the majority of SEVIS records were not subject to an injunction at that time.[5] Actions taken only in response to litigation may sometimes be viewed more skeptically, but no such concern exists here because ICE's actions encompassed both records subject to litigation and those that were not, showing that ICE's actions were an all-encompassing policy regardless of litigation status. Indeed, that is entirely consistent with the ICE policy issued on April 26, 2025, shortly before the reactivations. *See* Ex. H, Apr. 26, 2025 Policy, Doc. No. 26-8 at 2–3.

Second, ICE has stated in a declaration that it will not terminate the records again for the same NCIC hit. Ex. G, Baldwin Decl. ¶ 11 (Doc. No. 26-7 at 2). That is consistent with stipulations of dismissal entered in cases throughout the country in which ICE has agreed not to terminate the SEVIS record again for the same reason. Thus, ICE's actions of stipulating to dismissal on those terms support the credibility of the declaration that states that "ICE will not re-terminate SEVIS records based solely on the NCIC record that led to the initial termination[.]" Ex. G, Baldwin Decl. ¶ 11 (Doc. No. 26-7 at 3).

Thus, ICE has shown that the challenged behavior cannot reasonably be expected to recur.[6] *See Already, LLC*, 568 U.S. at 96; *Berge v. Sch. Comm. of Gloucester*, 107 F.4th 33, 45

---

[5] The government notes that a session of the Northern District of California subsequently entered a nationwide injunction in a case that was not a class action. *See Doe. v. Trump*, No. 25-cv-3140-JSW (N.D. Cal. May 22, 2025) at Dkt. 69.

[6] This Court's decision in *Rian Immigrant Ctr.* does not dictate a different result. There, this Court applied the doctrine of voluntary cessation in part because USCIS had indicated that it

(1st Cir. 2024). Plaintiff does not have a viable argument to the contrary. For example, any argument that the declarations are unreliable should be rejected because the declarations are made pursuant to 28 U.S.C. § 1746, and as such may be used as evidence in court. *See Rodríguez-Severino v. UTC Aero. Sys.*, 52 F.4th 448, 458 (1st Cir. 2022). That is all the more true when the government makes the representations about cessation. *See Berge*, 107 F.4th at 45.

If Plaintiff argues there is a *possibility* that the alleged misconduct could recur, that too is insufficient. "[W]e have never held that the doctrine--by imposing this burden [of showing that conduct is not reasonably expected to recur] on the defendant--allows the plaintiff to rely on theories of Article III injury that would fail to establish standing in the first place." *Already LLC*, 568 U.S. at 96; *see Boston Bit Labs, Inc.*, 11 F.4th at 10 ("That the Governor has the power to issue executive orders cannot itself be enough to skirt mootness, because then no suit against the government would ever be moot.  And we know some are."). Here, an allegation that conduct might potentially recur is too speculative to support standing, particularly in light of the declarations presented and the attenuated chain of possibilities that must first occur. *See Clapper*, 568 U.S. at 409-410 (the "threatened injury must be certainly impending," and "allegations of possible future injury are not sufficient" particularly when the threatened harm is premised "on a highly attenuated chain of possibilities") (quotations/citations omitted).

---

might revert to its challenged practice. *Rian Immigrant Ctr.*, 2020 WL 6395575, at *5.  To the contrary here, ICE has declared that it "will not re-terminate SEVIS records based solely on the NCIC record that led to the initial termination[.]"  Ex. G, Baldwin Decl. ¶ 11 (Doc. No. 26-7 at 3).  ICE also sent a letter to each person "associated with a SEVIS record that was terminated under SCAI and then reactivated," saying that "the SEVP termination of SEVIS records during this time period will not, by itself, be used as a basis for denial of future immigration benefits or a determination that one did not maintain his or her nonimmigrant status during that time period." *Id*.

19

### 4.    Plaintiff Lacks Standing to Assert any Future Claim, which is Unripe Regardless

Plaintiff's complaint also requests that the Court "[e]njoin Defendants from taking any further adverse action based on the terminated SEVIS record unless due process is provided." Compl., Doc. No. 1 at 3.  But that claim fails for lack of standing and because it is not ripe in any event.

To establish standing, Plaintiff must demonstrate (1) injury in fact, (2) causation, and (3) redressability.  *Clapper*, 568 U.S. at 409.  Plaintiff cannot make that showing here for the same reasons that the voluntary cessation doctrine does not apply: ICE returned the record to active months ago; ICE has said it will not terminate them again on the same basis; ICE instituted a new policy regarding terminations; and any allegations about future actions are entirely speculative. Accordingly, Plaintiff identifies no actual or imminent injury.  *See Clapper*, 568 U.S. at 409 (injury must be "certainly impending"); *Reddy v. Foster*, 845 F.3d 493, 500 (1st Cir. 2017) (finding no standing where plaintiff failed to show a credible threat of future harm).[7]

For the same reason, Plaintiff's request to enjoin "further adverse action based on the terminated SEVIS record" is not ripe because it rests on "contingent future events that may not occur as anticipated, or indeed may not occur at all." *Texas*, 523 U.S. at 300.

---

[7] To the extent Plaintiff relies on *FBI v. Fikre*, that case does not change the analysis because it turned on the nature of the activity involved. There, the Supreme Court expressed concern over the likelihood of repetition because the targeted conduct—Fikre's attendance of religious services—was constitutionally protected. *See Fikre*, 601 U.S. at 242 ("To appreciate why [the case is not moot], it is enough to consider one aspect of Mr. Fikre's complaint. He contends that the government placed him on the No Fly List for constitutionally impermissible reasons, including his religious beliefs."). Fikre's conduct—visiting religious establishments—was also of a nature that may recur frequently, making a potential future injury more concrete. Here, there is no such similar conduct.

## V.     CONCLUSION

For the foregoing reasons, the Court should dismiss Plaintiff's complaint for lack of subject matter jurisdiction under Fed. R. Civ. P. 12(b)(1).


Dated: September 26, 2025                              Respectfully submitted,

                                                      LEAH B. FOLEY
                                                      United States Attorney

                                                      */s/ Julian N. Canzoneri*
                                              By:     Julian N. Canzoneri
                                                      Assistant U.S. Attorney
                                                      U.S. Attorney's Office
                                                      John Joseph Moakley U.S. Courthouse
                                                      One Courthouse Way, Suite 9200
                                                      Boston, Massachusetts 02210
                                                      (617) 748-3170
                                                      julian.canzoneri@usdoj.gov

## CERTIFICATE OF SERVICE

I hereby certify that a true copy of the above document was served upon the attorneys of record by means of the Court's Electronic Case Filing system on September 26, 2025.

Dated: September 26, 2025                              */s/ Julian N. Canzoneri*
                                                      Julian N. Canzoneri
                                                      Assistant U.S. Attorney

21