UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| PRIYANK RAJ, | * | |
| | * | |
| Plaintiff, | * | |
| | * | |
| v. | * | Civil Action No. 1:25-cv-10911-IT |
| | * | |
| UNITED STATES DEPARTMENT OF | * | |
| HOMELAND SECURITY, et al., | * | |
| | * | |
| Defendants. | * | |

MEMORANDUM & ORDER

July 13, 2026

TALWANI, D.J.

Plaintiff Priyank Raj brings this action against the United States Department of Homeland

Security ("DHS"), United States Citizenship and Immigration Services ("USCIS"), and the

Student and Exchange Visitor Program ("SEVP"). In his Complaint for Declaratory and

Injunctive Relief Under the Administrative Procedure Act [Doc. No. 1] ("Complaint"), Raj

alleges that Defendants' termination of his Student and Exchange Visitor Information System

("SEVIS") record on or around April 8, 2025, was arbitrary, capricious, an abuse of discretion,

and not in accordance with law, in violation of the Administrative Procedure Act ("APA"),

5 U.S.C. § 706. Id. ¶ IV.

Defendants seek dismissal of Raj's Complaint [Doc. No. 1] for lack of subject matter

jurisdiction. Mot. to Dismiss ECF 1 [Doc. No. 25]. For the reasons stated below, the Motion to

Dismiss [Doc. No. 25] is GRANTED in part and DENIED in part.

## I.   Background

### A.   *Statutory and Regulatory Background*

#### 1.   F-1 Visas

The F-1 visa is a nonimmigrant visa issued to a noncitizen "who is a bona fide student qualified to pursue a full course of study and who seeks to enter the United States temporarily and solely for the purpose of pursuing such a course of study . . . at an established college, university, . . . or other academic institution." 8 U.S.C. § 1101(a)(15)(F)(i); see 22 C.F.R. § 41.12 (describing the F-1 visa as designated for "student[s] in an academic or language training program" (capitalization omitted)). F-1 visas are issued by the U.S. Department of State ("DOS") and may be revoked by "a consular officer, the Secretary [of State], or any [DOS] official to whom the Secretary has delegated [revocation] authority[.]" 22 C.F.R. § 41.122; see 8 U.S.C. § 1201(i).

Although a noncitizen must possess a valid visa to be admitted to the United States, the visa alone does not ensure entry into the country. See 8 U.S.C. § 1182(a)(7)(B)(i)(II); id. § 1201(h) ("Nothing in this chapter shall be construed to entitle any alien, to whom a visa or other documentation has been issued, to be admitted [to] the United States, if, upon arrival at a port of entry in the United States, he is found to be inadmissible[.]"). To gain entry, an F-1 student must have both a valid passport and visa, see 8 C.F.R. § 214.1(a)(3)(i), and present "a Form I-20 . . . issued in the student's name by a school certified by [SEVP] for attendance by F-1 foreign students[,]" id. § 214.2(f)(1)(i)(A). F-1 visa holders must also provide "documentary evidence of financial support in the amount indicated on the Form I-20" and verify their intention "to attend the school specified in the . . . visa[.]" Id. § 214.2(f)(1)(i)(B)–(C).

An F-1 student "may be admitted [to the United States] for a period up to 30 days before" the relevant educational program begins and may be present in the country throughout "the time during which an F-1 student is pursuing a full course of study at an [approved] educational

institution . . . or engaging in authorized practical training following completion of studies." Id.
§ 212.4(f)(5)(i). This period constitutes an F-1 student's "[d]uration of status[.]" Id. Status is maintained so long as "the student is making normal progress toward completing a course of study." Id.

F-1 students do not maintain status if they engage in "[a]ny unauthorized employment[,]" id. § 214.1(e); "willful[ly] fail[] to provide full and truthful information requested by DHS[,] regardless of whether or not the information requested was material[,]" id. § 214.1(f); or are "convict[ed] . . . for a crime of violence for which a sentence of more than one year imprisonment may be imposed[,] regardless of whether such sentence is in fact imposed[,]" id. § 214.1(g). Status may also be terminated "by the revocation of a waiver [of admissibility] authorized under . . . [8 U.S.C. § 1182(d)(3) or (4)][,]" "by the introduction of a private bill to confer permanent resident status on such alien[,]" or "pursuant to notification in the Federal Register, on the basis of national security, diplomatic, or public safety reasons." Id. § 214.1(d).

 2. SEVIS

SEVIS, which is administered by Immigration and Customs Enforcement ("ICE") through SEVP, is "'the web-based system that [DHS] uses to maintain information' about F-1 students." Presidents' All. on Higher Educ. & Immigr. v. Noem, 824 F. Supp. 3d 168, 181 (D. Mass. 2026) (alteration in original) (quoting Liu v. Noem, 780 F. Supp. 3d 386, 394 (D.N.H. 2025), appeal dismissed, No. 25-1643, 2025 WL 3904829 (1st Cir. Aug. 14, 2025)); see 22 C.F.R. § 62.2.

SEVIS functions as "the definitive record of student . . . status and visa eligibility[.]" Presidents' All. on Higher Educ. & Immigr., 824 F. Supp. 3d at 181 (quoting 9 Foreign Affs. Manual 402.5-4(B)(a)). Schools that wish to host international students must apply for certification from SEVP through SEVIS and, if approved, issue the requisite Form I-20s necessary for students to obtain F-1 visas. See 8 C.F.R. § 214.2(f)(1)(iii); id. § 214.3(a)(1).

SEVIS contains various pieces of information about F-1 students, including their enrollment and graduation dates, programs and areas of study, compliance with the requirements of the educational programs in which they are enrolled, and any school disciplinary action taken in connection to a criminal conviction. See 8 U.S.C. § 1372(c)(1); 8 C.F.R. § 214.3(g). Certified schools are obligated to report in SEVIS, inter alia, "[a]ny student who has failed to maintain status or complete his or her program" and "[a]ny disciplinary action taken by the school against the student as a result of the student being convicted of a crime" within twenty-one days. 8 C.F.R. § 214.3(g)(2)(ii)(A), (D).

B.      *The Student Criminal Alien Initiative*

In March 2025, DHS commenced the Student Criminal Alien Initiative ("SCAI"). Pursuant to the SCAI, ICE personnel searched for F-1 students in the National Crime Information Center ("NCIC") and provided the results of the NCIC search to DOS. See Defs.' Ex. G, at ¶¶ 6–7 [Doc. No. 26-7] ("Declaration of Akil Baldwin" or "Baldwin Declaration"); see also Presidents' All. on Higher Educ. & Immigr., 824 F. Supp. 3d at 182; Bushireddy v. Lyons, No. 25-1102-SLS, 2026 WL 759480, at *3 (D.D.C. Mar. 18, 2026). In turn, DOS "revoked some [F-1] visas [for students] with an NCIC record" and requested that SEVP "terminate the SEVIS records" of any F-1 student "whose visa was not valid." Baldwin Decl. ¶¶ 7–8 [Doc. No. 26-7]. SEVP also "terminated the SEVIS records of each [F-1] student with a record in NCIC[,]" regardless of whether the student's visa had been revoked. See id. ¶ 8.

The visa revocations and SEVIS record terminations led to a deluge of lawsuits brought by affected F-1 students. See Presidents' All. on Higher Educ. & Immigr., 824 F. Supp. 3d at 183 (collecting district court cases).

On April 26, 2025, DHS internally released a "broadcast message[,]" entitled "SEVIS Notice–Policy Regarding Termination of Records." Defs.' Ex. H, at ECF 2 [Doc. No. 26-8]. In

4

the message, DHS set forth a "variety of reasons" permitting SEVP to terminate SEVIS records, including "U.S. Department of State Visa Revocation (Effective Immediately)[.]" Id. The message also set out DHS's position that, when "DOS revokes a nonimmigrant visa effective immediately, SEVP may terminate the nonimmigrant's SEVIS record based on the visa revocation with immediate effect, as such a revocation can serve as a basis of removability under INA § 237(a)(1)(B)." Id. at ECF 2–3. But DHS also clarified in the message that "SEVP should not . . . terminate a nonimmigrant's SEVIS record on this basis until it has confirmed that [DOS] has revoked the visa." Id. at ECF 3.

Also in late April 2025, SEVP reactivated the SCAI-terminated SEVIS records, retroactive to the date of termination. See Baldwin Decl. ¶¶ 12–13 [Doc. No. 26-7]; Defs.' Ex. E, at ¶¶ 5, 7 [Doc. No. 26-5] ("Declaration of Andre Watson" or "Watson Declaration"). Despite the reactivation, however, the "event history" of the SEVIS database "memorialize[s] whatever modifications are made to [a student's] SEVIS account." Baldwin Decl. ¶ 13 [Doc. No. 26-7].

      C.     *The Plaintiff*

Priyank Raj, a citizen of India living in Massachusetts, was admitted to the United States with F-1 status. Compl. Ex. B, at ECF 2 [Doc. No. 1-5]. Raj's F-1 status was premised on his full-time enrollment in a graduate program at the University of the Cumberlands. Compl. ¶ III [Doc. No. 1].

On August 19, 2018, Raj was charged with a misdemeanor in New York. Compl. Ex. C, at ECF 30 [Doc. No. 1-5]. The charge was dismissed on February 25, 2019, under a state law of criminal procedure permitting adjournment of an action in local criminal court in contemplation of dismissal. Id. (citing N.Y. Crim. Proc. § 170.55). Accordingly, the charge did not result in a conviction. See id.; Compl. ¶ III [Doc. No. 1]. Neither Raj nor the Defendants claim that Raj has a record of any other criminal charge or any criminal conviction.

On or around April 8, 2025, Raj's SEVIS record was "terminated by the government, with the stated reason: 'OTHER – Individual Identified in criminal records check and/or has had their visa revoked.'" Id. Raj received no prior notice of the termination and "was informed only via a call from university administration and a follow-up email from the Director of Graduate Admissions." Id.

Raj commenced this action against Defendants on April 11, 2025. See id. ¶ V. In his Complaint [Doc. No. 1], Raj asserts one count of violation of the Administrative Procedure Act, 5 U.S.C. § 706, on several grounds: (1) the termination of his SEVIS record was arbitrary, capricious, an abuse of discretion, and not in accordance with law; (2) Defendants did not provide Raj with a meaningful opportunity to respond, appeal, or challenge the termination; and (3) the termination decision "relied on irrelevant or erroneous information (a dismissed charge), which does not meet the threshold for visa revocation or SEVIS termination under DHS policy." Id. ¶ IV. In the Complaint [Doc. No. 1], Raj requests that the court declare that the termination of Raj's SEVIS record was unlawful and set the termination aside, order USCIS and SEVP to reinstate his SEVIS record or "provide a formal process to challenge the termination[,]" enjoin Defendants from "taking any further adverse action based on the terminated SEVIS record unless due process is provided[,]" and award any other relief the court deems just and proper. Id. ¶ V.

Raj's SEVIS record was reinstated on or around April 28, 2025. Mem. ISO Mot. to Dismiss 13 [Doc. No. 27]; Opp'n ECF 1 ¶ 3 [Doc. No. 30]. In light of the reinstatement, Defendants have moved to dismiss the Complaint [Doc. No. 1] pursuant to Federal Rule of Civil Procedure 12(b)(1). Mot. to Dismiss ECF 1 [Doc. No. 25].

## II.    Mootness

Defendants contend that, because Raj's SEVIS record has been reinstated retroactive to the date of termination, there are no longer grounds upon which this court may grant relief. See

6

Mem. ISO Mot. to Dismiss 13–14 [Doc. No. 27]. Insofar as Raj argues that reinstatement is insufficient relief because his SEVIS record history will permanently show a prior termination, Defendants argue that the retroactivity of the reactivation, coupled with the "individualized letter [sent by ICE] . . . stating that reactivation of the SEVIS record is retroactive to the date of record termination[,]" properly addresses this concern. Id.

Raj responds that, where Defendants reinstated his SEVIS record "only after litigation commenced" and have not made a "binding commitment to adhere to the [APA], to implement corrective changes addressing the problem that caused the termination, or to adopt any policy ensuring that Defendants will refrain from causing harm in the same manner again[,]" the case is not moot under the voluntary cessation doctrine. Opp'n ECF 2–3 [Doc. No. 30].

A.  *Standard of Review*

A motion to dismiss for mootness is a challenge to the court's subject matter jurisdiction. See Mangual v. Rotger-Sabat, 317 F.3d 45, 56 (1st Cir. 2003) (evaluating mootness as an issue of subject matter jurisdiction). A case is moot where it is "impossible for a court to grant any effectual relief whatever to the prevailing party." Chafin v. Chafin, 568 U.S. 165, 172 (2013).

The mootness review is grounded in "[t]he case or controversy requirement [and] ensures that courts do not render advisory opinions." Overseas Mil. Sales Corp. v. Giralt-Armada, 503 F.3d 12, 16–17 (1st Cir. 2007). "But as long as the parties have a concrete interest, however small, in the outcome of the litigation, the case is not moot." Ellis v. Bhd. of Ry., Airline & S.S. Clerks, Freight Handlers, Express & Station Emps., 466 U.S. 435, 442 (1984). "The burden of establishing mootness rests squarely on the party raising it, and '[t]he burden is a heavy one.'" Mangual v. Rotger-Sabat, 317 F.3d 45, 60 (1st Cir. 2003) (quoting United States v. W.T. Grant Co., 345 U.S. 629, 633 (1953)).

A defendant's voluntary cessation of a challenged practice usually does not deprive a federal court of its power to determine the legality of the practice. Knox v. Serv. Employees Int'l Union, Local 1000, 567 U.S. 298, 307 (2012) (citing City of Mesquite v. Aladdin's Castle, Inc., 455 U.S. 283, 289 (1982)). "If it did, the courts would be compelled to leave the defendant free to return to his old ways." Friends of the Earth, Inc. v. Laidlaw Env'tl Servs. (TOC), Inc., 528 U.S. 167, 189 (2000) (quoting City of Mesquite, 455 U.S. at 289). Rather, for a case to be rendered moot, "a defendant claiming that its voluntary compliance moots a case bears the formidable burden of showing that it is absolutely clear the allegedly wrongful behavior could not reasonably be expected to recur." Already, LLC v. Nike, Inc., 568 U.S. 85, 91 (2013) (quoting Laidlaw, 528 U.S. at 190).

Stated differently, a claim is not moot if (1) "a defendant voluntarily ceases the challenged practice in order to moot the plaintiff's case"; and (2) "there exists a reasonable expectation that the challenged conduct will be repeated after the suit's dismissal." Nat'l Ass'n of Gov't Emps. v. Yellen, 120 F.4th 904, 912 (1st Cir. 2024) (quotation omitted). The purpose of the voluntary cessation doctrine is "to stop a scheming defendant from trying to 'immuniz[e] itself from suit indefinitely' by unilaterally changing 'its behavior long enough to secure a dismissal' and then backsliding when the judge is out of the picture." Id. (quoting Boston Bit Labs, Inc. v. Baker, 11 F.4th 3, 10 (1st Cir. 2021)).

In considering Defendants' mootness challenge, the court considers not only the allegations in the Complaint [Doc. No. 1], but also additional facts relevant to the mootness inquiry from other parts of the record. See Yellen, 120 F.4th at 907 ("[W]e may look beyond the complaint when assessing mootness."); O'Neil v. Canton Police Dep't, 116 F.4th 25, 29–30 (1st

8

Cir. 2024) (considering parties' supplemental submissions on mootness, including supplemental briefs and sworn affidavits).

As set forth below, the court joins several other district courts in finding that, under the voluntary cessation doctrine, Raj's Complaint [Doc. No. 1] was not rendered moot by virtue of Defendants' reactivation of Raj's SEVIS record.[1]

B.    *Discussion*

As to the first condition of the voluntary cessation doctrine, Defendants' reactivation of the terminated SEVIS records and abrupt policy change in April 2025 appear to have been motivated by the "filing of a torrent of lawsuits about the SEVIS terminations during the SCAI . . . and numerous adverse judicial rulings." Presidents' All. on Higher Educ. & Immigr., 824 F. Supp. 3d at 191; see id. (collecting cases). Defendants argue that the reactivation of "both records subject to litigation and those that were not" demonstrates that their actions "were an all-encompassing policy regardless of litigation status[.]" Mem. ISO Mot. to Dismiss 18 [Doc. No. 27]. But Defendants offer no explanation for changing their policy after at least two lawsuits challenging the terminations on a policy-wide or nationwide basis were already pending. See Chen v. Noem, No. 25-cv-03292-SI, 2025 WL 1150697, at *4 (N.D. Cal. Apr. 18, 2025); Presidents' All. on Higher Educ. & Immigr., 824 F. Supp. 3d at 191; see also Defs.' Ex. D, at 38:11–16, 42:18–19, 52:2–4 (containing the May 5, 2025 testimony of a SEVP division chief at a

---

[1] See, e.g., Presidents' All. on Higher Educ. & Immigr. v. Noem, 824 F. Supp. 3d 168 (D. Mass. 2026); Bushireddy v. Lyons, No. 25-1102-SLS, 2026 WL 759480 (D.D.C. Mar. 18, 2026); Doe v. Noem, No. 3:25-cv-00023, 2026 WL 562452 (W.D. Va. Feb. 28, 2026); Roe v. Noem, No. 25-cv-40-BU-DLC, 2026 WL 194636 (D. Mont. Jan. 26, 2026); Saxena v. Noem, No. 5:25-cv-05035-KES, 2026 WL 84248 (D.S.D. Jan. 12, 2026); Vemula v. Noem, No. 1:25-cv-04561, 2025 WL 3527141 (N.D. Ill. Dec. 9, 2025); Du v. U.S. Dep't of Homeland Sec., No. 3:25-cv-644-OAW, 2025 WL 1549098 (D. Conn. May 31, 2025).

hearing in Bushireddy v. Lyons, No. 25-1102-SLS (D.D.C.), in which the chief testified, inter

alia: "But that's obviously why we're here, because you're seeing the impact [of the mass record

termination]. And obviously with the lawsuits, we're all seeing the impact."); Watson Decl. ¶ 5

[Doc. No. 26-5] (stating only that "ICE has re-activated SEVP records for plaintiff(s) who met the

parameters [for the initial termination]"); Baldwin Decl. ¶ 10 [Doc. No. 26-7] (stating only that

"[o]n April 26, 2025, SEVP sent out a Broadcast Message to all SEVP personnel announcing a

new policy regarding the termination of SEVIS records").

Resolving all inferences in Raj's favor, as the court must do at this stage, the court finds

that Defendants' reactivation of the SEVIS records is akin to the kind of "opportunism, on the

part of the defendant, that typically supports invocations of mootness exceptions where voluntary

cessation of the challenged conduct is at issue." See Am. Fed'n. of Gov't. Emps. v. Off. of

Special Couns., 1 F.4th 180, 188 (4th Cir. 2021).

As to the second condition, Defendants have failed to carry their burden of demonstrating

"that it is absolutely clear the allegedly wrongful behavior could not reasonably be expected to

recur." Already, LLC, 568 U.S. at 91 (quoting Laidlaw, 528 U.S. at 190). Defendants point the

court to a declaration stating that: "Consistent with its new SEVIS policy, ICE will not re-

terminate SEVIS records based solely on the NCIC record that led to the initial termination or

solely on any related visa revocation that is effective upon departure." Baldwin Decl. ¶ 11 [Doc.

No. 26-7]. As another session of this court has aptly explained when presented with the same

statement,

> This statement promises only that ICE will not use the past NCIC hits identified
> during the SCAI and the resulting visa revocations as grounds to re-terminate a
> SEVIS record; it makes no representation that ICE will not terminate SEVIS records
> in the future based on other existing or new NCIC hits or new visa revocations. In
> short, the government's ambiguous "declaration falls short of demonstrating that it

10

cannot reasonably be expected to do again in the future what it is alleged to have done in the past."

Presidents' All. on Higher Educ. & Immigr., 824 F. Supp. 3d at 191 (quoting Fed. Bureau of Investigation v. Fikre, 601 U.S. 234, 242 (2024)). As the Defendants urge, the court treats this declaration as reliable, see Mem. ISO Mot. to Dismiss 19 [Doc. No. 27], and, by extension, accepts as true that the declaration means what it says: that ICE guarantees that it will not use the same NCIC hit leading to Raj's SEVIS record termination in April 2025 to terminate his SEVIS record a second time, but it does not guarantee that Raj's SEVIS record will not be subject to another abrupt termination connected to a different NCIC hit.

Should Raj ultimately succeed on his APA claim, his request that the court "[o]rder USCIS and SEVP to reinstate Plaintiff's SEVIS record or provide a formal process to challenge the termination[,]" Compl. ¶ V(b) [Doc. No. 1], would no longer function as effectual relief given Defendants' reinstatement of Raj's SEVIS record in April 2025. "But a case becomes moot only when it is impossible for a court to grant any effectual relief whatever to the prevailing party." Chafin, 568 U.S. at 172 (emphasis added); see United States v. Washington, 596 U.S. 832, 837 (2022) (similar); Mission Prod. Holdings, Inc. v. Tempnology, LLC, 587 U.S. 370, 377 (2019) (similar). Where the court may still grant in some form the declaratory or injunctive relief Raj seeks, Raj maintains a "concrete interest, however small, in the outcome of this litigation[.]" Chafin, 568 U.S. at 172 (quoting Knox, 567 U.S. at 307–08).

Accordingly, the court concludes that Raj's Complaint [Doc. No. 1] has not been rendered moot by the reactivation of his SEVIS record in April 2025.

### III.    Standing & Ripeness

Defendants also contend that Raj's "request[] that the Court '[e]njoin Defendants from taking any further adverse action based on the terminated SEVIS record unless due process is

provided'. . . . fails for lack of standing and because it is not ripe in any event." Mem. ISO Mot. to Dismiss 20 [Doc. No. 27] (quoting Compl. ¶ V(c) [Doc. No. 1]). Defendants specifically argue that Raj "identifies no actual or imminent injury[,]" and, "[f]or the same reason," contend that his request to enjoin further adverse action is not ripe "because it rests on contingent future events that may not occur as anticipated, or indeed may not occur at all." Id. (quotation omitted).

A. *Standard of Review*

The doctrine of standing is rooted in Article III of the Constitution, which confines federal courts to the adjudication of actual "cases" and "controversies." See U.S. Const. art. III, § 2, cl. 1; Lujan v. Defs. of Wildlife, 504 U.S. 555, 560–61. Standing consists of three elements: "[t]he plaintiff must have (1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." Spokeo, Inc. v. Robins, 578 U.S. 330, 338 (2016), as revised (May 24, 2016) (quoting Defs. of Wildlife, 504 U.S. at 560–61). "[P]laintiffs must demonstrate standing for each claim that they press and for each form of relief that they seek (for example, injunctive relief and damages)." TransUnion LLC v. Ramirez, 594 U.S. 413, 431 (2021).

To establish the first element of standing, an injury-in-fact, a plaintiff must demonstrate "an invasion of a legally protected interest" that is "concrete and particularized" and "actual or imminent, not conjectural or hypothetical." Defs. of Wildlife, 504 U.S. at 560. "The particularization element of the injury-in-fact inquiry reflects the commonsense notion that the party asserting standing must not only allege injurious conduct attributable to the defendant but also must allege that he, himself, is among the persons injured by that conduct." Hochendoner v. Genzyme Corp., 823 F.3d 724, 731–32 (1st Cir. 2016).

Standing also requires causation and redressability, which "'overlap as two sides of a causation coin.'" Carpenters Indus. Council v. Zinke, 854 F.3d 1, 6 n.1 (D.C. Cir. 2017) (quoting

Dynalantic Corp. v. Dep't of Def., 115 F.3d 1012, 1017 (D.C. Cir. 1997)). "[I]f a government action causes an injury, enjoining the action usually will redress that injury." Id.

As relevant here, "a person exposed to a risk of future harm may pursue forward-looking, injunctive relief to prevent the harm from occurring, at least so long as the risk of harm is sufficiently imminent and substantial." Roe v. Healey, 78 F.4th 11, 20 (1st Cir. 2023) (quoting TransUnion, 594 U.S. at 435). "[T]his standard is satisfied 'if the threatened injury is "certainly impending," or there is a "substantial risk" that the harm will occur.'" Id. (quoting Susan B. Anthony List v. Driehaus, 573 U.S. 149, 158 (2014)).

B.    *Discussion*

Defendants challenge is limited to specific forms of relief and does not address Raj's standing to bring the APA claim as a whole.[2]

To the extent Raj seeks enjoinment of unspecified "collateral reputational and administrative harm," including unidentified "potential future adverse treatment by DHS, ICE, CBP, or [DOS] based on the erroneous data" leading to the April 2025 SEVIS record termination, Opp'n ECF 3 [Doc. No. 30], the court finds that Raj has not sufficiently demonstrated that these future harms are "certainly impending" or are at a "substantial" risk of occurring. See Susan B. Anthony, 573 U.S. at 158. Raj has not, for example, identified the specific "potential adverse treatment" to which he alludes, nor has he described the circumstances under which he anticipates

---

[2] Had Defendants challenged the APA claim as a whole, such a challenge would not have succeeded at this stage in the litigation where Raj has sufficiently identified an injury accruing to him because of Defendants' termination of his SEVIS record and may viably seek redress in the form of  a declaratory judgment or injunctive relief enjoining Defendants from terminating his SEVIS record in the same manner in the future. See, e.g., Bushireddy, 2026 WL 759480, at *11 (granting summary judgment to the plaintiff on similar factual allegations and "enjoin[ing] the Government from terminating [the plaintiff's] SEVIS record for any reason other than those contained in statute or regulation").

that he may be subject to such treatment. Stated differently, the "collateral, reputational, and administrative harm" Raj asserts constitute a "hypothetical future injury" that "does not give [him] standing" to seek remediation in this manner. In re Evenflo Co., Inc., Mktg., Sales Practices & Prods. Liab. Litig., 54 F.4th 28, 41 (2022); see Laufer v. Acheson Hotels, LLC, 50 F.4th 259, 276 (1st Cir. 2022) ("At bottom, [imminence] requires that the injury not be conjectural or hypothetical or simply possible." (quotations omitted)); accord In re Evenflo Co., Inc., 54 F.4th at 41 (holding plaintiffs had standing to seek damages but lacked standing for injunctive relief against defendant company, in part because the complaint "d[id] not allege that any plaintiff intends to purchase [defendant's product] in the future").

IV.    **Conclusion**

For the foregoing reasons, Defendants' Motion to Dismiss [Doc. No. 25] is GRANTED in part and DENIED in part:

1.  The Motion [Doc. No. 25] is DENIED insofar as Defendants seek dismissal of the Complaint [Doc. No. 1] in its entirety for mootness.

2.  The Motion [Doc. No. 25] is GRANTED insofar as Defendants seek dismissal of so much of the Complaint [Doc. No. 1] that seeks enjoinment of "further adverse action based on the terminated SEVIS record unless due process is provided." Id. ¶ V(c).

IT IS SO ORDERED.

July 13, 2026                        /s/ Indira Talwani
                                     United States District Judge

14